## AUTOMOBILE INSURANCE CO. OF HARTFORD, CONN., et al. v. SOUTHERN TRANSP. CO. et al.

### No. 12012.

Court of Civil Appeals of Texas. Dallas.

Jan. 16, 1937.

Rehearing Denied Feb. 20, 1937.

Lawther & Cramer, of Dallas, for appellants.

Thompson, Knight, Baker, & Harris and Touchstone, Wight, Gormley & Price, all of Dallas, and H. F. Montgomery, of Houston, for appellees.

JONES, Chief Justice.

This cause is combined with cause No. 12033, styled "The Southern Transportation Company et al, Plaintiffs in Error, vs. Commerical Standard Insurance Company et al., Defendants in Error," and No. 12012 is given to the combined cause. The two appeals resulted from the same trial and the same judgment.

The suit was instituted by Southern Transportation Company, hereinafter called plaintiff, against Automobile Insurance Company of Hartford, Conn., hereinafter

called Automobile Insurance Company, on a policy insuring plaintiff against damages by fire to the maximum amount of $5,000; in the alternative, to recover a similar amount on a similar insurance policy issued by the Commerical Insurance Company, and again in the alternative, to recover a similar sum against both insurance companies jointly. The Commerical Insurance Company, by cross-action over against the Automobile Insurance Company, sought to recover against its co-defendant any sum that might be adjudged against it. The case was tried to a jury, and on peremptory instruction by the court a verdict was returned in favor of plaintiff in the sum of $5,000, with interest at the rate of 6 per cent. per annum from January 14, 1932; against plaintiff on its alternative cause of action; and against the Commerical Insurance Company on its cross-action against the Automobile Insurance Company. Judgment was entered in accordance with this instructed verdict. The Automobile Insurance Company perfected its appeal as against the judgment entered in favor of plaintiff, and, after such appeal was perfected, the Commercial Insurance Company, by writ of error, perfected its appeal against the Automobile Insurance Company, because of its failure to recover on its cross-action. On this latter appeal, plaintiff also perfected an appeal because it was denied a recovery against the Commerical Insurance Company.

An affirmance of the judgment of the lower court will effectually dispose of all the issues, under our view of the case. Plaintiff is a corporation with its principal place of business in Dallas county; the Automobile Insurance Company is incorporated under the laws of the state of Connecticut, and is lawfully doing business in Texas, under a permit issued by the proper authorities, and has an office with agents in Dallas county; Commercial Standard Insurance Company is a corporation with its home office and principal place of business in Dallas county. Plaintiff is a common carrier of merchandise for hire, and has truck lines to carry such freight to various sections of the state.

The Commerical Insurance Company issued to plaintiff a policy of insurance, which, by its terms, commences at noon November 5, 1930, and expires at noon November 5, 1931. This policy covered loss sustained by fire to the maximum

amount of $5,000. On or about July 14, 1931, Commercial Insurance Company informed plaintiff that it desired to be relieved of plaintiff's insurance, no reason being given therefor. This proposal of release of the Commerical Insurance Company was accepted by plaintiff, provided another company, solvent and reliable, would write a similar policy to that of the Commerical Insurance Company. The Automobile Insurance Company was at once consulted, and it was agreed that a coverage policy by said company for the plaintiff, similar to that issued by Commercial Insurance Company, would be issued. The plaintiff and the two insurance companies agreed that plaintiff's existing coverage by the policy of the Commercial Insurance Company would be canceled and the Automobile Insurance Company would substitute therefor its policy with the same rights of coverage of the former policy. The parties further agreed that the effective date of the new policy would be noon July 20, 1931, and the effective date for the cancellation of the old policy would be noon of July 20, 1931; that is, the policy of the Automobile Insurance Company would begin at the exact moment the Commercial Insurance Company policy was canceled.

Under the law of this state, a carrier by truck of merchandise must secure a permit from the Railway Commission to operate as such common carrier, and, before a permit will be issued, such carrier must carry an insurance policy, similar to those in suit, in a maximum amount to be fixed by the Railway Commission. Section 13, art. 911b, Vernon's Ann.Civ.St. The policies in question complied with this statutory provision and the insurance policy issued to the plaintiff by the Commercial Insurance Company was on file with the Railway Commission. The new policy, effective at noon July 20, 1931, was sent by plaintiff's agent to the Railway Commission, to be substituted for the old policy of the Commercial Insurance Company, and the request was made of the Railway Commission that this old policy be returned. The new policy was stamped by the Railway Commission "received," on the morning of July 21, 1931.

Said section 13 authorizes the Railway Commission to promulgate rules covering the provisions in respect to insurance policies and other matters prescribed in said statute. One rule promulgated by the

Railway Commission under this delegated authority is, in effect, that no policy of insurance can be canceled until 30 days' notice of the intended cancellation shall be given by the insurer, and the policies in question each provided that, before same could be canceled, the insured must have 30 days' notice that such policy will be canceled. No formal notice was served by Commercial Insurance Company that its policy would be canceled at noon July 20, 1931. Acting, as we suppose, under this rule of giving 30 days' notice, a clerk in the Railway Commission in charge of this business, on or about July 23, 1931, discovered that no notice of. cancellation had been given by the Commercial Insurance Company, returned to the sender the new policy issued to plaintiff by the Automobile Insurance Company, with the statement that the Commercial Insurance Company policy could not be canceled until a 30-day notice had been served. We do not deem it necessary to go into the correspondence of the respective parties and another insurance policy issued by Automobile Insurance Company, after the fire, which occurred on the morning of July 21, 1931, destroyed goods in transit by plaintiff's truck line to the value considerably in excess of the maximum of the insurance policy, for we believe, and will later state the reason, that, notwithstanding the rule of the Railway Commission as to the 30-day notice of cancellation, and notwithstanding the fact that the Railway Commission returned the Automobile Insurance Company's policy to the sender, such policy was in force on and after noon of July 20, 1931, and that the Commercial Insurance Company's policy was canceled at said time and not in force. The matters subsequent to the fire have no direct bearing on this case.

The Automobile Insurance Company, at the time it issued the policy, billed plaintiff for the agreed initial payment of $100, and, when it received notice of the fire and the destruction of the plaintiff's goods, it sent its adjuster to examine into the fire and make a report. Some time later it discovered that the Railway Commission had refused to cancel the Commercial Insurance Company's policy, because of the absence of the compliance on its part with the 30-day notice rule in respect to such intended cancellation.

The Railway Commission apparently ignored the fact that the issuance of the Automobile Insurance Company's policy and the cancellation of the Commercial Insurance Company's policy had been had by agreement of all parties interested, and that there was not a moment's time in which plaintiff's coverage did not exist.

It is apparent from this record that either the policy of the Commercial Insurance Company, issued November 5, 1930, or the policy of the Automobile Insurance Company, issued to become effective at noon July 20, 1931, represented plaintiff's coverage on July 21, 1931, the date of the destruction of his goods by fire.

■ It is equally apparent that the interested parties—to wit, the two insurance companies and plaintiff—agreed that the Commercial Insurance Company's policy represented the coverage to July 20, 1931, and that the Automobile Insurance Company's policy represented the coverage from and after said date. It is also clearly apparent that the only obstacle in the way of carrying out this agreement of the interested parties is the failure of the Commercial Insurance Company to have given the 30-day notice of its intended cancellation of its policy in a strict compliance with such rule of the Railway Commission and the terms of the policy. Is this rule fatal to the contention of the Commercial Insurance Company that its policy was canceled prior to the loss of plaintiff's goods by fire?

It was the evident purpose of the Legislature, by the enactment of section 13 of article 911b, to require continued insurance coverage of freight by a person operating a motor freight line. In order to carry out such purpose of the enactment, the Railway Commission promulgated the 30-day notice rule before an insurance company carrying such coverage could cancel its policy. This purpose of the Legislature is made plain by the following provisions contained in said section 13: "Each such motor carrier shall, on or before the date of the expiration of the term of any policy or bond so filed by him, file a renewal thereof, or new bonds or policies containing the same. terms and obligations of the preceding bonds and policies, and shall each year thereafter on or before the expiration date of the existing bonds and policies, file such renewal policies and bonds so as to provide continuous and unbroken protection to the

public having legal claims against such motor carrier."

Whenever a carrier of goods by motor freight provides an unbroken coverage for the freight he carries, there is a literal and absolute compliance with this statute, regardless of whether such coverage be furnished at different times by one or more solvent and reliable insurance companies. In the instant case, the coverage from noon November 5, 1930, to noon July 20, 1931, was represented by the policy of the Commercial Insurance Company. The coverage from noon July 20, 1931, until the date of the fire was represented by the policy of the Automobile Insurance Company, but the coverage was nevertheless continuous and unbroken, the terms of said section 13, article 911b, fully complied with, and plaintiff's shippers protected every moment of the time.

But, inquires the Automobile Insurance Company, What about the rule of the Railway Commission, requiring 30 days' notice before an existing policy can be canceled. Manifestly, this rule was promulgated in order to make certain the requirement of said section 13 that there must be at all times an unbroken coverage. It is clear that, where an insurance policy issued by a solvent and reliable insurance company is, by agreement of the parties, substituted for an existing policy, the rule has no application. It is elementary that the provision specifying a given number of days for the cancellation of insurance contracts may be waived by the parties, provided, in cases of this kind, where the public has an interest, the canceled policy is immediately substituted by a similar policy of a solvent and reliable insurance company. This seems to be the settled rule of law, and is followed in this state. Westchester Fire Ins. Co. v. McMinn (Tex.Civ.App.) 188 S.W. 25, 26, in which the rule is thus stated: "A policy of insurance may be canceled at any time before loss, by agreement between the parties, and there may be cancellation by consent of the parties, independent of the terms of the policy; and in such case an immediate payment of the unearned premium may not be required in order to make valid the agreed cancellation. As to whether there was an agreement here was a question of fact."

Other Texas cases in point are: Glover v. Employers' Liability Assur. Corp. et al. (Tex.Civ.App.) 80 S.W.(2d) 1078; Meador v. Rudolph (Tex.Civ.App.) 218 S.W. 520. Some of the cases in point from other jurisdictions are: Gratopp v. Carde Stamping, etc., Co., 216 Mich. 355, 185 N.W. 675; Allen v. Railroad Commission, 179 Cal. 68, 175 P. 466, 8 A.L.R. 249; Eurich v. General Casualty & Surety Co., 152 Md. 209, 136 A. 546; Zakrzewski v. American Box Board Co. et al., 256 Mich. 26, 239 N.W. 336.

It would be a strange rule of law to say that all parties at interest, by agreement, cannot accomplish without delay the same purpose that was intended to be accomplished by a delay of 30 days, in order to comply strictly with a rule.

We therefore hold that, as the undisputed evidence shows the insurance policy of Commercial Insurance Company, by agreement of all parties, was canceled at noon July 20, 1931, and that the policy of the Automobile Insurance Company became effective at noon July 20, 1931, the judgment against the latter company for the maximum amount of its policy is the correct judgment, and the court did not err in giving the peremptory instructions.

It necessarily follows that, in our opinion, the judgment of the lower court should in all things be affirmed, and it is so ordered.

Affirmed.