## AMALGAMATED CASUALTY INS. CO. v. WINSLOW.

### No. 8317.

United States Court of Appeals for the District of Columbia.

Argued April 7, 1943.

Decided May 10, 1943.

---

664

Mr. Walter M. Bastian, of Washington, D. C., with whom Mr. Peter N. Chumbris, of Washington, D. C., was on the brief, for appellant.

Mr. Samuel B. Brown, of Washington, D. C., with whom Messrs. Nathan M. Brown and Benjamin B. Brown, both of Washington, D. C., were on the brief, for appellee.

Before EDGERTON and ARNOLD, Associate Justices, and EICHER, Chief Justice of the District Court of the United States for the District of Columbia.

EDGERTON, Associate Justice.

Appellee Winslow recovered judgment in the Municipal Court of the District of Columbia against Fred Elliott for personal injuries caused by the negligent operation of Elliott's taxicab. Appellee docketed this judgment in the United States District Court and garnisheed two insurance companies, Pennsylvania Casualty and Amalgamated Casualty. The District Court gave judgment against both garnishees and directed that if either "pays more than one-half of the judgment, with interest and costs, it shall recover of the other garnishee all sums paid over and above one-half of the judgment herein granted." Amalgamated has appealed but Pennsylvania has not.

With exceptions not pertinent here, operators of passenger cars for hire are required by law to file with the Public Utilities Commission of the District of Columbia "a bond or bonds, policy or policies, of liability insurance or certificate of insurance in lieu thereof in a solvent and responsible surety or insurance company * * *. No such bond or policy of insurance may be canceled unless not less than twenty days prior to such cancellation or termination notice of intention so to do has been filed in writing with the Commission unless cancellation is for nonpayment of premiums, in which event five days' notice as above provided shall be given."[1] Amalgamated issued to Elliott a liability insurance policy covering his cab, effective June 16, 1940, and filed the required certificate with the Commission. An endorsement on the certificate states: "It is understood and agreed that this policy shall continue in force and effect until canceled by the company by giving 20 days (or 5 days when premium is not paid) written notice of its intention to do so, to the Public Utilities Commission of the District of Columbia." On October 6, 1940, Pennsylvania issued to Elliott its policy covering the same car and filed the required certificate with the Commission. From that time on, Pennsylvania received premiums and Amalgamated did not. Appellee was injured on October 30, 1940. On the same day, but after the accident, Amalgamated notified the Commission that it was canceling its policy. At the time of the accident the Commission's records showed that Elliott was insured in both Amalgamated and Pennsylvania. Both are conceded to be financially capable of paying appellee's judgment.

Amalgamated contends that the statutory requirement of notice of cancelation is intended only to protect the public from the operation of uninsured cabs. It concedes that it would be liable to appellee[2] if Elliott had not been covered by a new policy in a solvent company, but it contends that since he was covered it is not liable. We do not agree. Whether or not appellant's policy was, as against Elliott,[3] effectively canceled before the accident, we think the statute and the endorsement on the policy forbid us to hold that it was canceled as against appellee and the public. The express requirement of notice of cancelation does not except cases in

[1] D.C.Code, 1940, § 44—301.

[2] Cf. Greenberg v. Flaherty, 306 Mass. 95, 27 N.E.2d 683; Note, 129 A.L.R. 851.

[3] Cf. Automobile Ins. Co. v. So. Transportation Co., Tex.Civ.App., 101 S.W.2d 585.

which new insurance has been taken out. Some courts appear to have read such an exception into somewhat comparable provisions of workmen's compensation acts,[4] but a recent case declines to do so.[5] If such an exception were recognized in cases like this one, the public would be deprived of a part of the protection which the statute seeks to give; for an injured person could not then safely sue any insurer of record, but would have to inquire into the state of the accounts between insurer and insured.

 Although the two insurers filed no cross-claims, as they might have done under Federal Rules of Civil Procedure Rule 13(g), 28 U.S.C.A. following section 723c, they consented to the adjudication of their mutual rights.[6] The court ruled that either insurer, on paying the judgment, would be entitled to recover one-half its amount from the other insurer. We think this clause of the judgment should be modified. Since Pennsylvania received premiums but Amalgamated did not, we think that as between the two companies the loss should fall upon Pennsylvania. If Pennsylvania pays the judgment it should recover nothing from Amalgamated; on the other hand, if Amalgamated pays the judgment it should be reimbursed in full by Pennsylvania. One who is compelled to pay a claim which another ought in fairness to pay is subrogated to the creditor's rights against him.[7] With this modification the judgment is affirmed.

Modified and affirmed.

---

[4] Eurich v. General Casualty & Surety Co., 152 Md. 209, 136 A. 546; Gratopp v. Carde Stamping & Tool Co., 216 Mich. 355, 185 N.W. 675.

[5] Tri-State Casualty Co. v. Speer, 189 Okl. 191, 115 P.2d 130.

[6] F.R.C.P. Rule 15(b).

[7] Aetna Life Ins. Co. v. Middleport, 124 U.S. 534, 549, 8 S.Ct. 625, 31 L.Ed. 537; Gerseta Corporation v. Equitable Trust Co., 241 N.Y. 418, 150 N.E. 501, 504, 43 A.L.R. 1320; Aetna Life Ins. Co. v. Moses, 287 U.S. 530, 541, 53 S.Ct. 231, 77 L.Ed. 477, 88 A.L.R. 647; Note, 61 A.L.R. 587.